LAMOTHE AND YOUNG, INC. *v.* ERWIN O. VEHS

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 9, 1960—decided January 24, 1961

*Francis R. Danaher,* with whom, on the brief, was *Samuel H. Platcow,* for the appellant (plaintiff).

*L. Stewart Bohan,* for the appellee (defendant).

KING, J. The plaintiff, a corporation engaged in road construction, grading and excavating, had rendered services to Vehco Realty, Inc., hereinafter referred to as Vehco, a realty development company. In payment for the services, Vehco executed and delivered to the plaintiff, as payee, three promissory notes. Each note bore interest at 6 per cent, and

each was signed with Vehco's name by the defendant, as secretary of Vehco, and by Samuel C. Cohen, as treasurer. The defendant also personally endorsed each of the notes before delivery to the plaintiff. The plaintiff, in turn, endorsed each note over to, and discounted it at, the Home National Bank and Trust Company of Meriden. None of the notes was paid at maturity, and subsequently, on August 7, 1957, the plaintiff paid each note at the bank and thus became its holder. In the fall of 1957, Vehco began to fail, and on March 12, 1958, a creditors' committee was formed to work out a plan for submission to the creditors. After further meetings and discussions, a plan was approved and ratified by all the creditors, including the plaintiff, present at a meeting held March 19, 1958. The plan was subsequently embodied in an agreement which was signed by over 90 per cent of the creditors of Vehco, in number and amount. The plaintiff was one of the signers. The agreement, in brief, provided that Vehco should transfer all of its assets to Irwin D. Mittelman, of Middletown, as trustee; that the creditors should release all mechanics' liens or attachments; that each creditor should present his claim to the trustee; and that the trustee should liquidate the assets, pay secured claims, and claims having priority, in accordance with a schedule, and pay creditors, such as the plaintiff, having general unsecured claims, pro rata from any balance left in the trustee's hands. After liquidation of all the assets, and after payment to all the secured creditors of the percentages set forth in the schedule, the trustee had about $3400 left, and against this there are claims having priority, although disputed, in the amount of $3700. Nothing has yet been paid to the plaintiff or any of the other unsecured

general creditors, and quite obviously the prospects of any payment in the future are poor.

Although on April 12, 1958, the plaintiff duly presented its claim on the three notes to the trustee, it thereafter, on May 21, 1958, instituted this action against the defendant as endorser, in three counts, one covering each note. The defendant admitted that he had endorsed the notes, but in a special defense he alleged that the agreement with the creditors operated as a release of the maker, Vehco, and a discharge of the defendant endorser, because of the plaintiff's failure expressly to reserve any right of recourse against the defendant as endorser. This claim was made under subsection (5) of General Statutes § 39-121,[1] which is § 120 of the Uniform Negotiable Instruments Law. From a judgment for the defendant, the plaintiff appeals.

The agreement does not, in terms, provide for any release of the claim against the original debtor. See cases such as *Rockville National Bank* v. *Holt,* 58 Conn. 526, 531, 20 A. 669. Taken as a whole, it is clearly a common-law composition with creditors, made through a named trustee. 15 C.J.S. 671, 697 § 15; 6 Corbin, Contracts, pp. 109, 113. Thus it was an accord, which, if performed according to its terms, would become a satisfaction. *In re Clarence A. Nachman Co.,* 6 F.2d 427, 430 (2d Cir.). It has been fully performed, and so has become an accord

---

[1] "Sec. 39-121. [DISCHARGE] OF PERSON SECONDARILY LIABLE. A person secondarily liable on the instrument [that is, an endorser] is discharged:   . . . (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." . (See §§ 42a-3-601, 42a-3-606, effective Oct. 1, 1961.)

and satisfaction, as to the secured creditors, since they have been paid the percentage of their claims called for in the agreement. See *Beach* v. *Whittlesey,* 73 Conn. 530, 535, 48 A. 350. But as to other signatory creditors, since the trustee has not completed distribution of the assets in accordance with the terms of the agreement, it cannot yet be definitely known whether the agreement will, or will not, be properly performed. If the agreement is carried out according to its terms, it will operate to release Vehco from the debt, even though the assets are insufficient to permit any pro rata payment to unsecured general creditors such as the plaintiff. But until the agreement is performed, it will not operate to release Vehco, although it would suspend any suit against Vehco on the notes as long as the agreement is being properly carried out. *In re Clarence A. Nachman Co.,* supra; 15 C.J.S. 679, § 10. The agreement contains a provision that during its operation no signatory creditor shall take any steps to enforce "the collection or payment" of the indebtedness and that each creditor shall "receive and accept" the payments called for under the agreement. It contains no provision that a signatory creditor accepts the agreement itself in substitution for, and in place of, his right of action against Vehco, so as to constitute a novation. 15 C.J.S. 681; 6 Corbin, op. cit., p. 113. Such language could have been readily inserted, as it often is in such agreements, had the parties so intended. *In re Clarence A. Nachman Co.,* supra. The presumption, where, as here, express language releasing the debtor is lacking, is that such a release does not occur until actual performance of the composition agreement has been completed as to a given signatory creditor. Id., 431; *State ex rel. McClure* v. *Northrop,* 93 Conn. 558, 567, 106 A. 504.

Since the composition agreement has not yet been completely performed as to the plaintiff, it cannot be said that the agreement has yet released Vehco. The special defense of the defendant is based upon § 39-121 (5) of the General Statutes. While it is correct that there was no express reservation against the defendant endorser, Vehco has not yet been released, and consequently the provision of the statute relied upon by the defendant is inapplicable. That Vehco had been released was the ground of the court's decision, and for the reasons heretofore pointed out it was erroneous. Whether the defendant could have asked for a stay or continuance of the plaintiff's suit until it could be determined whether the composition agreement would be fully performed and thus operate as a release of the debtor is a matter which was not raised in the court below and which we do not pass upon. See cases such as *First National Bank & Trust Co.* v. *McCoy,* 124 Conn. 111, 116, 198 A. 183. Nor is there occasion for consideration of the plaintiff's claim that the defendant assented to the plaintiff's execution of the composition agreement. But it should be noted that such assent is mentioned under subdivision (6), and not under subdivision (5), of § 39-121. See annotation in 169 A.L.R. 753.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.